Jacob BLUMENTHAL, Jr., et al.

v.

GREAT AMERICAN MORTGAGE
INVESTORS et al.

Civ. A. No. 76–107 A.

United States District Court,
N. D. Georgia,
Atlanta Div.

Dec. 22, 1976.

Mitchell A. Kramer, Kramer & Salus, Philadelphia, Pa., Hugh W. Gibert, Haas, Holland, Levison & Gibert, Atlanta, Ga., for plaintiffs.

Carey P. DeDeyn, Sutherland, Asbill & Brennan, Atlanta, Ga., for Great American Corp.

Sidney O. Smith, Jr., John R. Crenshaw, William C. Humphreys, J., Alston, Miller & Gaines, Atlanta, Ga., for Great American Management.

Charles L. Gowen, Joseph B. Haynes, Michael C. Russ, King & Spalding, Atlanta, Ga., Charles W. Boand, Wilson & McIlvaine, Chicago, Ill., for Arthur Andersen & Co.

## ORDER

RICHARD C. FREEMAN, District Judge.

This is an action for damages brought on account of alleged violations of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5 of the Securities and Exchange Commission adopted pursuant thereto, 17 C.F.R. § 240.10b–5. Jurisdiction is grounded upon § 27 of the Securities Exchange Act, 15 U.S.C. § 78aa. The action is presently before this court on plaintiffs' amended motion for class certification, see Rule 23(c), Fed.R.Civ.P., filed in accordance with the directions of this court in its order entered June 2, 1976.

In that order, this court deferred ruling on plaintiffs' class certification motion noting that "the vague and unrefined tenor of plaintiffs' allegations [with respect to the alleged 'continuing course of conduct'] ma[d]e it impossible for the court to speculate on whether plaintiffs ha[d] satisfied the prerequisites to class certification," noting further that the failure "to specify even a single prospectus or other document containing the purported written misrepresentations which might warrant the court to find that there are questions of law and fact common to the class" was fatal to the motion.

Plaintiffs Jacob ("Jack") and Blanche Blumenthal seek to represent the putative class composed of:

all purchasers . . . of shares of beneficial interest of Trust, who bought such shares between August, 1969, and October 21, 1971, excepting any officers and/or directors of any defendant herein

[hereinafter the "1969–1971 class"].

Plaintiffs Albert and Paul Blumenthal seek to represent the putative class constituting

all purchasers . . . of shares of beneficial interest of Trust, who bought such shares between October 22, 1971, and March 7, 1975, excepting any officers and/or directors of any defendant herein.

[hereinafter the "1971–75 class"].

The rationale behind the parameters of the two proposed classes is apparently that in August, 1969, GAMI commenced operations, while on March 7, 1975, one of the defendants herein, Arthur Andersen and Co. [here-

inafter "Arthur Andersen"], disclosed that it could no longer express an opinion as to the financial condition of GAMI, as represented in certified financials for the fiscal years 1971, 1972 and 1973.

In the instant action, plaintiffs allege that defendant engaged in a "common course of conduct" that violated the federal securities laws for a period of time since it commenced operations. In particular, plaintiffs allege that defendant made misrepresentations or omitted to state material facts, including, but not limited to, the assurance that the GAMI reserve for loan losses was adequate, that GAMI investigated each developer and builder to which it loaned money to determine the economic soundness of each loan, that GAMI continued to advance money to existing obligors in order to conceal defaults on payments of principal and interest and failed to disclose such additional loans in relevant written documents disseminated to the public.

At the outset, we note that the burden of demonstrating that the prerequisites of Rule 23 have been satisfied falls on those who seek to maintain the class action. *Amswiss International Corp. v. Heublein, Inc.*, 69 F.R.D. 663 (N.D.Ga.1975); *Tolbert v. Western Electric Co.*, 56 F.R.D. 108 (N.D. Ga.1972). Thus, the named class representative must demonstrate that all the requirements of Rule 23(a) have been satisfied, and that one of the categories in Rule 23(b) has been met.

### NUMEROSITY

Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all its members would be impracticable. Plaintiffs have alleged that the putative class would consist of approximately 7,000 purchasers or shareholders of GAMI, and all the defendants apparently concede that the numerosity requirement has been met.

### COMMON QUESTIONS OF LAW AND FACT

The requirement of Rule 23(a)(2) that there exist questions of law or fact common to the class as a whole is closely related to the further requirement of Rule 23(b)(3) that the common legal or factual questions predominate over those affecting the individual members of the class. Plaintiffs have alleged in rather vague and general terms the existence of common legal questions, including (1) whether the annual reports, prospectuses, quarterly reports, and other documents were false and misleading; (2) the materiality of alleged misstatements and omissions contained in such documents; (3) whether the defendants used manipulative and deceptive devices in connection with the purchase and sale of shares; and (4) the responsibility of the various defendants for the violations of the federal securities laws.

Plaintiffs, by amendment in response to this court's order of June 2, 1976, have listed six purported documents upon which they assert that the court might predicate a finding of commonality with respect to representations made to persons similarly situated. Specifically, plaintiffs rely upon:

1. GAMI's Annual Report for the Fiscal Year ended July 31, 1971 [dated October 21, 1971], including the prospectus for $250,000,000 worth of subordinated debentures. (1971 prospectus) [dated October 21, 1971]

2. Prospectus dated November 16, 1972, for $250,000,000 worth of subordinated debentures due October 1, 1979 (1972 prospectus) [dated November 16, 1972]

3. Annual Report . . . [filed with the Securities and Exchange Commission] for the Fiscal Year ended July 31, 1973, including the prospectus for 63,512 shares of beneficial interest (1973 prospectus) [dated October 20, 1973]

4. Quarterly report to shareholders dated March 4, 1974.

It is well settled that any material variations made or degrees of reliance thereon may make a securities fraud action inappropriate for class treatment. *See Simon v. Merrill Lynch, Pierce, Fenner and Smith, Inc.*, 482 F.2d 880, 882 (5th Cir.

1973); Rule 23, Advisory Committee's Official Note, 39 F.R.D. 98, 107 (1966). Thus, as a general rule purported class actions based on oral rather than written misrepresentations may not be maintained as class actions. *Id. See, e. g., Morris v. Burchard*, 51 F.R.D. 530 (S.D.N.Y.1971); *Moscarelli v. Stamm*, 288 F.Supp. 453 (E.D.N.Y.1968). Likewise, if the written representations contain material variations, or if they do not reach the investors, they form no valid basis for class treatment. *Cf. Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909 (9th Cir. 1964); *Frankel v. Wyllie & Thornhill, Inc.*, 55 F.R.D. 330 (W.D.Va. 1972); *Dolgow v. Anderson*, 43 F.R.D. 472 (E.D.N.Y.1968); *Richland v. Cheatham*, 272 F.Supp. 148 (S.D.N.Y.1967).

■ With respect to the putative 1969–1971 class which plaintiffs Jacob and Blanche Blumenthal purportedly represent, it is quite anomalous that these representative plaintiffs could have relied on any standardized representations contained in the aforementioned documents, since the allegations of the complaint disclose that the last purchase of GAMI shares by these particular plaintiffs occurred on July 20, 1971, prior to the time that such documents were published or publicly disseminated. It is impossible to glean from this record upon what basis these plaintiffs made their investment decision or that they share common questions of law or fact with the class they purport to represent as a whole. In a similar vein, four of the above-mentioned documents were published or disseminated subsequent to the last purchase of GAMI shares by named plaintiffs Albert and Paul Blumenthal, which occurred on June 15, 1972. Of the two which possibly could have reached these plaintiffs' attention, one was a prospectus for a subordinated debenture issue, or in other words a debt issue. Since the named plaintiffs herein seek to represent holders of beneficial interests in GAMI, it is extremely unlikely that plaintiffs would have relied upon the 1971 prospectus for debentures in deciding to purchase beneficial interests in GAMI

Plaintiffs attempt to salvage their commonality allegations by relying on the "common course of conduct theory" whereby it is held that where the complaint alleges a common course of conduct extending over an entire period, directed against all investors, generally relied upon, and violating common statutory provisions, it is likely that the questions common to all investors will be substantial. *See, e. g. , Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 914 (9th Cir. 1964); *Richland v. Cheatham*, 272 F.Supp. 148, 153 (S.D.N.Y.1967) ("plaintiffs . . . have not chosen to plead one manipulation extending throughout this entire period, i. e. 'a common course of conduct over the entire period' "); *Dolgow v. Anderson*, 43 F.R.D. 472 (E.D.N.Y. 1968); *Jenson v. Continental Financial Corp.*, 404 F.Supp. 806, 810 (D.Minn.1975) ("controlling question is whether the defendants' alleged misrepresentations were similar or made pursuant to a single scheme"); *Fischer v. Kletz*, 41 F.R.D. 377, 381 (S.D.N.Y.1966) ("interrelated, interdependent, and cumulative" financial statements); *In re Caesars Palace Securities Litigation*, 360 F.Supp. 366 (S.D.N.Y.1973) ("common nucleus of operative fact and issues.")

■ In the instant case, plaintiffs have alleged a series of misstatements or material misrepresentations, including that reserves for loan losses were represented as adequate in the 1971, 1972 and 1973 prospectuses, that the defendants misrepresented the fact that they investigated the economic soundness of the developers and their investments, that they failed to disclose that the trust advanced more money to developers above the initial amount of the loan in order to conceal the fact that there were defaults in principal and interest, and that all of such representations and/or misleading omissions were made pursuant to a single scheme to give an overly optimistic portrayal of the Trust's financial condition and to defraud investors. Since the plaintiffs cannot cite a single document for the period from 1969–71, this court is unable to conclude that there were a set of relatively standardized representations to which all

the members of the 1969–1971 class were exposed; therefore, because of the absence of such standardized conduct, the commonality requirement of Rule 23(a)(2) has not been adequately satisfied. However, with respect to the 1971–75 class, we think that plaintiffs have demonstrated the existence of a common nucleus of factual and legal issues, including, but not limited to, whether such representations or omissions were "material", whether such acts and omissions, and whether any, some, or all of the defendants acted in concert to effect this result. Accordingly, we conclude that there exist questions of law and fact common to the 1971–75 class that might warrant class treatment, assuming that the other prerequisites of Rule 23 have been satisfied.

## TYPICALITY

■ The third prerequisite of Rule 23(a) is the requirement that the claims or defenses of the representative party be typical of the claims and defenses of the class as a whole. Several of the defendants have objected to the "typicality" of the claims of Paul and Albert Blumenthal. In particular, the GAMI defendants have pointed out that the only publicly disseminated document upon which these plaintiffs could have relied is the 1971 Annual Report, and that the plaintiffs have failed to identify specifically any alleged material misrepresentation or omission contained therein. In this connection, this court has already held that in a securities fraud action predicated upon a common course of conduct theory, "there must be . . . specific identification of the false statements made, and in which portions of the financial documents they appear, in what respects the statements were false, misleading, or inaccurate or what omissions were made or why the documents are believed to be misleading; when the documents were issued and which defendants were responsible for the issuance." *Elster v. Alexander et al.*, Civil Action No. 75–1069A (N.D.Ga. May 10, 1976) (Moye, J.). Since the plaintiffs have failed to identify or isolate any particular misstatement or omission contained in the 1971 prospectus that is similar to those contained in the

subsequent document, this court could only speculate as to any nexus between their claims and those who purchased GAMI stock in the five years following their purchases because of representations made in the latter documents. In sum, plaintiffs have failed to satisfy the typicality requirement.

## ADEQUACY OF REPRESENTATION

■ The fourth prerequisite to class certification is that the representative parties "fairly and adequately protect the interests of the class." Rule 23(a)(4), Fed.R. Civ.P. Adequacy of representation is a critical factor in determining class maintainability because of the potential binding effect of such judgment on absent class members by virtue of the doctrine of res judicata. Thus, adequate representation depends upon the coalescence of two factors: (1) the plaintiff's attorney must be qualified, experienced, and capable of conducting the proposed class action litigation, and (2) the plaintiffs must not have interests antagonistic to those of the class. *E. g., Wetzel v. Liberty Mutual Ins. Co.*, 508 F.2d 239, 247 (3rd Cir. 1975). With respect to the first requirement, plaintiffs' mere conclusory allegation that they "will fairly and adequately represent the interests of the class" is somewhat insufficient, without some supporting affidavit evidencing counsel's experience in complex class securities litigation or even some evidence indicating that plaintiffs are financially capable to bear the cost of sending individual notice to the absent members of the class. *See Parker et al. v. Kroger Co., Inc.*, Civil Action No. 76–1153A (N.D.Ga.Dec. 1976) (Freeman, J.).

Defendants have also contended that plaintiffs Paul and Albert Blumenthal's interests might be somewhat antagonistic to other members of the 1971–75 class, since numerous decisions have recognized inherent clashes between early and late purchases when the class is defined to extend over a prolonged period of time. *See, e. g., Robinson v. Penn Central Co.*, 58 F.R.D.

436, 444 (S.D.N.Y.1973); *Feldman v. Lifton,* 64 F.R.D. 539 (S.D.N.Y.1974). To illustrate, in *Robinson v. Penn Central Co., supra,* the court held that a purchaser could not represent a class of purchasers who bought before him since the late purchaser "would have an interest in minimizing the significance of earlier events in order to maximize the materiality of later events." 58 F.R.D. at 443. *Accord, Amswiss Int'l Corp. v. Heublein, Inc., supra,* 69 F.R.D. at 667. Likewise, in *Feldman v. Lifton, supra,* the Court found a significant conflict of interest between the putative representative and the members of the proposed class who had purchased at an *earlier* date, noting that

> investors who *purchased and sold* in the early part of the 10-year period, 1962–72, have an interest in emphasizing the significance of misrepresentations that preceded their purchases and in showing that the misstatements had ceased to inflate market prices before they sold. Plaintiffs and other investors in the period are interested in emphasizing the effect of misrepresentations late in the period, just prior to their purchases. Plaintiffs' interests thus may be antagonistic to those of class members who *purchased early in the period and sold* at around the time plaintiffs were purchasing their stock.

*Id.* at 549.

Conversely, claims of early purchasers might not be typical of those of late purchasers, or early purchasers might have interests antagonistic to those who purchased later in the period in the sense that early purchasers would have an interest in maximizing the significance of events that preceded their purchases while at the same time minimizing the significance of events that followed their purchases. *Robinson v. Penn Central Co., supra,* 58 F.R.D. at 443.

 ■  Applying these precepts to the instant case, it is evident that plaintiffs Albert and Paul Blumenthal made their last purchase of GAMI stock on June 15, 1972; nevertheless, they seek to represent the class of purchasers who bought up to and including March 7, 1975. Since the time factor makes it impossible for the named plaintiffs to have relied on any of the designated documents, except the 1971 10–K report filed with the S.E.C. and the debenture prospectus, defendants have argued that plaintiffs might not have the requisite incentive to prove the materiality of omissions or misrepresentations contained in documents disseminated subsequent to their purchase date. Moreover, defendants further note that plaintiffs Jack and Blanche Blumenthal sold *some* of their shares on April 4, 1973 for a profit; therefore, they contend that investors who sold their shares present claims typical of those who continued to hold their stock at the time of filing the action, and that their interests thus may be antagonistic. *See, e. g., Wood v. Rex Noreco, Inc.,* 61 F.R.D. 669 (S.D.N.Y.).

While many courts have recognized the inherent conflicts between parties who still hold their investment and those who have liquidated their interests, most courts have held that such differences do not create such a substantial conflict as to warrant denial of class certification. *Jenson v. Continental Financial Corp., supra,* 404 F.Supp. at 811. *See generally,* 7 C. Wright & A. Miller, *Federal Practice & Procedure* § 1768 at 639 (1972). Moreover, to the extent that certain conflicts develop between groups of early and late purchases, the appropriate remedy appears to be further subdivision of the class into appropriate subclasses. *See Green v. Wolf Corp.,* 406 F.2d 291, at 299 (2d Cir. 1968); *Brennan v. Midwestern United Life Ins. Co.,* 259 F.Supp. 673 (N.D. Ind.1966). Nevertheless, although we are unable to conclude that the potential clashes between the members of the broad class plaintiffs Albert and Paul Blumenthal purport to represent are fatal to class certification, we must conclude that plaintiffs have failed to affirmatively show the capability of plaintiffs' counsel to conduct complex securities class litigation of the sort demanded by the complaint or the plaintiffs' financial ability to pay the costs of notice to the absent members of the class which is required by Rule 23(b)(3).

## PREDOMINANCE OF COMMON LEGAL AND FACTUAL ISSUES

Even assuming arguendo that plaintiffs had satisfied the prerequisites of Rule 23(a), it is further incumbent upon plaintiffs to demonstrate that:

> the questions of law or fact common to the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Rule 23(b)(3), Fed.R.Civ.P.

In making the determination as to the predominance of common legal or factual questions and the superiority of class treatment, this court is admonished to consider, *inter alia,*

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Rule 23(b)(3), Fed.R.Civ.P.

■ At the outset, we note that as a general rule securities fraud actions have been held peculiarly amenable to class treatment, since such actions normally involve hundreds of class members who typically possess only small individual claims. Thus, the class action provides a useful mechanism for enforcing the policies underlying the securities laws and should be liberally allowed. *See generally,* 7A Wright & Miller, *supra,* § 1781 at 87 (1972) (and cases cited therein at n. 27). Therefore, in actions involving fraudulent misrepresentations in written form, or misleading omissions from material documents material facts pertinent to proving defendants' liability are common and would, therefore, predominate as to all purchasers who received the written communication. *E. g.,*

*In re Cohen's Will,* 51 F.R.D. 167, 174 (S.D. N.Y.1970) (complaint alleged that investors were "uniformly misled by the same false and misleading prospectus which induced them to purchase similar securities"); *Weiss v. Tenney Corp.,* 47 F.R.D. 283, 290 (S.D.N.Y.1969) (registration statement and prospectus); *Cannon v. Texas Gulf Sulphur,* 47 F.R.D. 60 (S.D.N.Y.1969) (press release issued on April 12). Moreover, as discussed somewhat earlier in connection with our consideration of the existence of common questions of law or fact, even if securities purchases have been made over an extended period of time during which a series of allegedly false or misleading financial statements are issued, defendant's liability may be determined in a class action based on a common course of conduct involving all investors. *E. g., Green v. Wolf Corp., supra; Esplin v. Hirschi,* 402 F.2d 94 (10th Cir. 1968) *cert. denied,* 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459; *Fischer v. Kletz,* 41 F.R.D. 377 (S.D.N.Y.1966); *Dolglow v. Anderson, supra, rev'd on other grounds,* 438 F.2d 825 (2d Cir. 1970); *Jenson v. Continental Financial Corp., supra.*

■ To the extent that plaintiffs seek to rely upon any purported uniform or standardized misrepresentations or omissions, it is clear that purchasers within the 1969–1971 period must be excluded from any class ultimately certified, since their purchases antedate the issuance of any common and relevant representations contained in documents in the amended complaint. *See Rosenfield v. Integrated Container Service Industries Corp.,* 50 F.R.D. 237 (S.D.N. Y.1970).

■ A more difficult question is presented, however, with respect to the predominance of common legal and factual issues as they relate to the 1971–1975 class. This court has previously concluded that plaintiffs have sufficiently alleged the existence of a common course of conduct and representations, including, *inter alia,* representations that loan loss reserves were adequate[1] and that defendants omitted to

---

1. At this juncture, however, we must note that defendant Arthur Andersen's contention that

"the adequacy of a reserve account is a matter of accounting judgment rather than the basis of

state material facts with respect to advancing further funds to obligors who were already in default or delinquent on current loan obligations. As the defendants assert, and as this court previously recognized, the plaintiffs' prior failure to specify any documents containing the alleged misrepresentations raised the specter that there might exist material variations as to the types of representations made to the investing public over the five and one-half year period, as well as individual questions of reliance. Thus, in this circuit it has been recognized that:

> if the writings contain material variations, emanate from several sources, or do not actually reach the subject investors, they are no more valid a basis for a class action than dissimilar oral representations.

*Simon v. Merrill Lynch, Pierce, Fenner and Smith, Inc., supra,* 482 F.2d at 882.

■ The factual circumstances surrounding this action and the few documents upon which plaintiffs rely belie their assertion that common questions of law or fact predominate over those relevant to the claims of individual class members. The only two documents which plaintiffs allege are part and parcel of the common thread of misrepresentations upon which plaintiffs could have conceivably relied are (1) the 1971 10K report filed with the S.E.C. and not publicly disseminated, and (2) the 1971 prospectus for a debenture offering. Quite significantly, plaintiffs Paul and Albert Rosenthal do not specifically allege that they relied on either of these documents nor even that they were exposed to them. On the contrary, it is wholly unlikely that either they or the class they represent relied on the debenture prospectus offering circular, since they purport to represent only purchasers of beneficial interests in GAMI, and not those holding debt or quasi-debt

obligations. In this connection, it has been recognized that debenture holders have divergent rights and that considerations motivating the purchase of debentures are extremely different from those motivating the purchase of equity shares of stock. *See Carlisle v. LTV Electrosystems, Inc.,* 54 F.R.D. 237, 239 (N.D.Tex.1972). Moreover, while defendants Kidder-Peabody and Brown did not participate in the drafting or auditing of financials contained in the 10–K report filed with the S.E.C., they did have some connection with the prospectus governing the offering of debentures. In short, the various sources from which these documents emanated when considered in conjunction with the apparent incapability of any of the named plaintiffs to show any reliance upon any uniform misrepresentation convinces this court that common questions will not predominate. Finally, to the extent that plaintiffs support their continuing course of conduct theory with references to Arthur Andersen's refusal to recertify financial reports as to the accuracy of the 1973 and 1974 financial statements as of March 27, 1975, because of significant intervening events, it is clear that none of the information contained in these financial statements was publicly disseminated *prior* to the named plaintiffs' purchases. By necessary implication therefrom, it would appear that any purported common course of fraudulent conduct causing artificial market inflation occurred as a consequence of misrepresentations made during the period 1972–1975, or in other words, *subsequent* to even the last purchases made by the representative plaintiffs. In this respect, it is well settled that one cannot represent a class of which he is not a member. *See Bailey v. Patterson,* 369 U.S. 31, 32–3, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962).

Thus, while there are common questions of law or fact, individual questions of reliance and causation are likely to dominate

---

any purported fraud claim" is wholly incorrect. In *Colonial Realty Co. v. Brunswick Corp.,* 337 F.Supp. 546 (S.D.N.Y.1971), the court did not forward such a proposition as a matter of law but held only that the contention therein was not supported by the evidence, stating:

> [t]he evidence does not convince me that the accountant's judgment here was so clearly wrong that the balance sheet can be found to be false and misleading for lack of a higher reserve.

*Id.* at 552.

where, as defendants Kidder-Peabody and Brown put it:

> [p]laintiffs ask this court to accept that common [questions of law and fact] predominate in a case where buyers of shares of beneficial interest between mid-1970 and mid-1972 allege that all buyers of beneficial shares from 1969–1975 relied on prospectuses issued between August, 1971 and April, 1973 in conjunction with the sale of three separate and distinct debenture offerings, 10–K reports not distributed to the public, and a quarterly report mailed to shareholders in 1974.

The plaintiffs have failed to isolate those portions of even these documents which purportedly contain the material misstatements nor have they shown that representations in the subsequent documents are similar to those which were in existence at the time of plaintiff's purchases. Likewise, they have failed to demonstrate that the earlier and later misrepresentations were made by defendant[s] pursuant to a single scheme to defraud or that any such representations were inextricably woven with the others. *Compare Green v. Wolf Corp., supra,* 406 F.2d at 299 ("misstatements and omissions claimed with regard to the Tidelands Motor Inn account are common to all three prospectuses.") In sum, plaintiffs have not satisfied this court at this stage of the proceeding that it is likely that there is a lack of "material variation" in the representations made by the defendant[s] in view of the fact that plaintiffs have not identified portions of the documents containing the purported representations and in further view of the fact that representations undoubtedly emanated from a number of sources including the Trust itself, Kidder-Peabody, Brown and Arthur Andersen.

Moreover, as to the diversity of factual claims, we are somewhat persuaded by *Trattner v. American Fletcher Mortgage Investors et al.,* 74 F.R.D. 352 (S.D.Ind. 1976), wherein a district court denied class action status to an action where plaintiff sought to represent all purchasers of shares or warrants from a real estate investment trust from December 1, 1973 through February 25, 1976. In that action plaintiffs alleged that defendants intentionally deceived them and the class of investors about the deteriorating status of AMFI's loan portfolio. The court denied certification on the grounds that legal or factual issues would not predominate on account of one of the plaintiff's sophistication in securities analysis and the other named plaintiff's reliance thereon, as well as the disparate fluctuations in the economy that had occurred over the 27-month class period. Accordingly, the court held:

> Although some "common and continuing course of conduct cases might, be appropriate for class resolution, this case is not one of them. Here the proposed class period consisted of twenty-seven months. During that period the record reveals that substantial changes took place in the American economy in that the prime rate rose considerably and the index of construction costs significantly increased. It is beyond dispute that such economic factors have a significant effect on the securities market. The marked differences in the national economy during the class period would require the resolution of many factual questions which would not be before the court were the case not to proceed on a class basis. *Id.* at 356.

In conclusion, then, this court is compelled to conclude that plaintiffs' have been unable to cure the "unrefined" and undefined nature of their class allegations nor have they demonstrated even a likelihood that common questions of law and fact will be predominate.

Accordingly, for the reasons hereinabove expressed, plaintiffs' motion for class certification is hereby DENIED.