Richard S. ROBINSON et al., Plaintiffs,

v.

PENN CENTRAL COMPANY et al., Defendants.

No. 71 Civ. 3800.

United States District Court,
S. D. New York.

Feb. 6, 1973.

**438**

David Berger, Leonard Barrack, Gerald J. Rodos, Philadelphia, Pa., Mortimer, Wolf, New York City, for plaintiffs; David Berger, P. A., Philadelphia, Pa., of counsel.

Donovan, Leisure, Newton & Irvine, Davis, Polk & Wardwell, Kenneth Thompson, New York City, Abraham L. Bienstock, Cleary, Gotlieb, Steen & Hamilton, Dewey, Ballantine, Bushby, Palmer & Wood, Hawkins, Delafield & Wood, Milbank, Tweed, Hadley & McCloy, New York City, Dilworth, Paxson, Kalish, Levy & Coleman, Philadelphia, Pa., Cahill, Gordon, Sonnett, Reindel & Ohl, Simpson, Thacher & Bartlett, New York City, Locke, Black & Locke, Beverly Hills, Cal., Donald J. Farage, Farage & Shrager, Philadelphia, Pa., for defendants.

LASKER, District Judge.

Plaintiffs filed this class and derivative action in the Eastern District of Pennsylvania charging defendants with violations, *inter alia*, of the securities laws, mismanagement and breach of their fiduciary duties. Judge Lord of the Eastern District of Pennsylvania, later directed, pursuant to 28 U.S.C. 1404(a), that Counts V and VII of the complaint, which charged various New York banks, brokerage houses and financial institutions with inside trading of Penn Central Company ("Penn Central") shares, be transferred to the Southern District of New York.

Various motions are presently before this court: (1) All defendants move to dismiss the complaint on the ground that plaintiffs have failed to satisfy the purchaser-seller requirement of Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2d Cir. 1952), cert. denied 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952); (2) Plaintiff seeks to amend the complaint pursuant to Rule 15, Fed. R.Civ.P.; (3) O'Neill, Investors and Alleghany move for summary judgment dismissing the complaint pursuant to Rule 56; (4) Plaintiff moves for a class action determination pursuant to Rule 23.

## THE MOTION TO AMEND THE COMPLAINT

██ As the complaint now stands, various plaintiffs bring this action on their own behalf and on behalf of a class consisting of "all *holders* of the common stock" of Penn Central during May, 1970. (Complaint, par. 18) (emphasis supplied). However, in order to avoid running afoul of the purchaser-seller requirement of 10b-5 first enunciated in *Birnbaum*, *supra*, plaintiffs seek to amend the complaint pursuant to Rule 15(a) to define the class as those who *purchased* shares of Penn Central stock during the period April 27, 1970 to June 18, 1970. As part of the amended com-

plaint, plaintiffs have substituted Albert Newton, who purchased 100 shares of Penn Central on May 5, 1970, as the sole representative of the class.

■■ Since the defendants have not demonstrated (nor have they attempted to do so) that they would in any way be prejudiced by the amendment of the complaint, and since plaintiffs have not been guilty of bad faith or delay, there is no reason, equitable or otherwise, not to abide by the Supreme Court's instruction that Rule 15 should be given a liberal construction. See Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed. 2d 222 (1962); 3 Moore's Federal Practice § 15.08, pp. 874–875. Accordingly, the motion to amend the complaint is granted.[1]

## THE AMENDED COMPLAINT

Count I of the amended complaint charges defendants with violations of § 10(b) of the 1934 Act and Rule 10b–5 (hereinafter collectively referred to as "10b–5"). Defendants fall into three categories: (1) the issuer: Penn Central Company ("Penn Central"); the sole owner of the stock of the Penn Central Transportation Company, whose assets are currently in reorganization under § 77 of the Bankruptcy Act (11 U. S.C. § 205); (2) stock brokerage houses with offices in the Southern District of New York;[2] (3) financial institutions with offices in the Southern District.[3]

Plaintiff contends that the defendants had in their possession during the period April 27, 1970 to June 18, 1970, material non-public inside information which indicated that the Penn Central was on the verge of bankruptcy. Defendants are alleged to have received such information (1) by reason of their relationship to Penn Central and its officers and directors (Amended complaint, par. 20) and (2) by having received prospectuses in connection with a proposed, but later aborted, debenture offering of the Penn Central. (Amended complaint, pars. 19, 20). The prospectus is alleged to have contained inside information that Penn Central had

1. Having permitted plaintiffs to amend the complaint, we need not consider whether the original complaint violates the *Birnbaum* rule. Accordingly, that sector of the defendants' consolidated motion to dismiss is denied as moot. Shields and Mitchum oppose the motion to amend the complaint on the ground that Newton lacks standing to assert claims based on alleged transactions in Penn Central stock which occurred after he made his own purchase. They argue that since he lacks standing, he may not represent a class of which he is not a member which might have standing. This argument rests on the assumption that the conspiracy allegations are no longer viable in this lawsuit. As discussed below, while the proof of conspiracy is insufficient to permit class action determination at this time, the complaint adequately alleges conspiracy. Accordingly, at this juncture plaintiff has standing to sue on behalf of purchasers who bought during the conspiratorial period. In any event, the question of standing is inappropriate on a motion to amend a complaint—unless it appears on the face of the complaint—which it does not here—that the proposed plaintiff has no standing. DiJulio et al. v. Digicon, Inc. et al., 339 F.Supp. 1284 (D.Md. March 27, 1972), cited by Shields and Mitchum, is inapposite. There it was held plaintiff could not represent the class as to a count as to which no cause of action was stated. Here, as we have said, the complaint does state a claim of conspiracy.

2. Butcher & Sherrerd ("Butcher"); E. F. Hutton & Co. ("Hutton"); Lehman Brothers ("Lehman"); Mitchum, Jones & Templeton, Inc. ("Mitchum"); William O'Neill & Co. ("O'Neill"); Pershing & Co. ("Pershing"); Carl M. Loeb Rhoades & Co. ("Loeb"); Drexel-Firestone, Inc. ("Drexel"); Goldman Sachs & Co. ("Goldman"); Salomon Brothers & Hutzler ("Salomon"); Shields & Co. ("Shields"); and HS Equities, Inc. ("HS");

3. Chase Manhattan Bank ("Chase"); Alleghany Corporation ("Alleghany"); Investors Diversified Services ("Investors"); Morgan Guaranty Trust Co. ("Morgan"); and Chase Fund.

first quarter losses in 1970 of $101.6 million, whereas the public was told through an allegedly false and misleading press report that Penn Central had suffered losses of "only" $62.7 million for that quarter.

The amended complaint charges "that defendants knew or should have known that the information was confidential" and could not be used for any purposes of their own, "that to do so was a breach of their fiduciary duties to the company and its stockholders, as well as to aid and abet those from whom they received the confidential material information . . .". (Amended complaint, par. 20).

It is further alleged that during the period of non-disclosure the defendants, acting on the basis of the inside information, "singly and in concert and for their own gain sold substantial amounts of the company stock." (Amended complaint, par. 22). Plaintiff claims that he had no knowledge of the non-public events and would not have purchased the stock of Penn Central on May 5, 1970 if he had known.

Count II of the amended complaint asserts a pendent common law derivative claim that the sales of the Penn Central stock by the defendants constituted a violation of fiduciary duty owed by the defendants to Penn Central and its stockholders. (Amended complaint, par. 30).

## MOTION FOR SUMMARY JUDGMENT BY WILLIAM O'NEILL, INC.

■ O'Neill is a stock brokerage house which executed sales totalling approximately 150,000 shares for the Chase Manhattan Bank at various times during the proposed class action period. O'Neill, through its vice president, James M. Tindall, III, asserts (1) that all the sales received from Chase were unsolicited; (2) that it was not informed of any reason why Chase wished to sell the securities; (3) that it was

unaware of any inside information concerning the Penn Central. (Affidavit of James M. Tindall, III, dated April 19, 1971). O'Neill further argues that even if it had received inside information from Chase before it executed the sales, it is not liable under § 10b–5, as a matter of law because it did not execute any orders for its own account or for its customers.

Although plaintiff does not counter the facts stated in the O'Neill affidavit, he points out that to date there has been virtually no discovery of any of the defendants, including O'Neill, and that he should be afforded a reasonable opportunity to establish the truth of his allegations.

■ We agree. The Court of Appeals of this Circuit has made it clear that summary judgment should be sparingly granted in securities fraud cases when little or no discovery has been completed and when, as is the case here, the defendants have exclusive possession of the facts. Schoenbaum v. Firstbrook, 405 F.2d 215 (2d Cir. 1968), cert. denied sub nom.; Manley v. Schoenbaum, 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969). Plaintiff is entitled to an opportunity to discover the knowledge, actual or constructive, of O'Neill at the time he executed the sales and whether O'Neill had a duty to the plaintiff to inquire as to the circumstances surrounding Chase's orders. See Securities & Exchange Commission v. Texas Gulf Sulfur, 401 F.2d 833 at 853 and 854–856 (2d Cir. 1968), cert. denied sub nom. Kline v. SEC, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969).

■ We do not agree with O'Neill's contention that, even assuming it possessed material inside information at the time it executed the sales, it would not be liable because it did not exercise purchase or sales orders for its own account or for discretionary accounts of its customers. While the decided cases appear to support O'Neill's argument that one who does not sue for its own account (or

for discretionary accounts) may not be liable as a tippee, the possibility remains here that O'Neill could be held liable as an aider and abettor or as a member of the alleged conspiracy. See Pettit v. American Stock Exchange, 217 F.Supp. 21 (S.D.N.Y.1963); Brennan v. Midwestern United Life Ins. Co., 259 F. Supp. 673 (N.D.Indiana 1966). In those decisions both courts found causes of action to be stated under 10b–5 where plaintiffs charged defendants with aiding and abetting.

O'Neill's motion for summary judgment is therefore denied without prejudice to renewal upon completion of discovery by plaintiff to be diligently pursued as to the nature of O'Neill's knowledge and participation.

MOTION FOR SUMMARY JUDGMENT BY ALLEGHANY AND INVESTORS DIVERSIFIED SERVICES

■ Alleghany, a financial institution, although it admits having placed a block trade of 96,000 shares of Penn Central stock with Goldman, Sachs on May 27, 1970, contends that it is not an insider because it had no common officers or directors with Penn Central, and its subsidiaries, or with any of the defendant banks, and, furthermore, was not a member of any bank steering committee or a substantial creditor of Penn Central. (Affidavit of Clifford M. Rainsdell, dated May 4, 1972.)

The amended complaint asserts, however, that the defendants became insiders *both* by reason of their relationship to the Penn Central and its officers and directors (Amended complaint, par. 20) *and* by reason of having received the prospectus in connection with the aborted debenture offering of the Penn Central. (Amended complaint, par. 20.) Alleghany does not deny that it did not receive the prospectus and there remains an issue of fact as to whether it acted on the basis of "inside" information contained in the prospectus. (See Footnote

12.) For this reason and because discovery has not commenced, (Schoenbaum v. Firstbrook, *supra*) the motion for summary judgment must be denied, subject to renewal on the conditions specified as to the O'Neill motion.

In addition to making the same argument as Alleghany, Investors predicates its motion for summary judgment on the ground that it is not, and never has been, a holder of Penn Central common stock and did not sell any Penn Central common stock in the period alleged by plaintiffs. It does not deny, however, that it acted as an investment advisor for Investors Mutual Inc., (not named as a defendant) a mutual fund, in connection with the sale of 243,200 shares of Penn Central stock during the period of May 6, 7, 8, 14, 15, 19, 21, 26 and 27. See Affidavit of Joseph F. Grinnell, dated May 4, 1972. Accordingly, Investors could be held liable as an aider and abetter if it possessed inside information and advised Investors Mutual to sell its shares. Investors' motion for summary judgment is denied without prejudice on the conditions stated above.

THE CLASS ACTION MOTION

■ Defendants resist plaintiff's motion for a class action determination on two grounds: (1) that the requirement of subsection (b)(3) of Rule 23 (the section plaintiff has chosen to rely upon under section (b)) is not met because individual questions of law or fact predominate over any questions of fact or law common to the class; (2) that plaintiff is not typical or representative of the class, as is required by Rule 23(a)(3) and (4).

For purposes of analysis of the motion, the propriety of class action treatment ought to be considered both with regard and without regard to the conspiracy allegations. Under either circumstances, we think that the record is too incomplete and, at this point, presents too many unresolved factual questions to permit a present determina-

tion as to the validity of defendants' contentions. We, therefore, believe that, in view of the Second Circuit's admonitions (1) that the district courts should be liberal in according class action status in 10b–5 suits;[4] (2) that courts should be cautious in denying class action status where to do so would sound the death knell of the action;[5] and (3) that plaintiff should be given an opportunity at least to complete threshold discovery;[6] the proper course of action here is to deny plaintiff's motion without prejudice to renewal upon a proper showing that the problems enunciated in this opinion are resolved or resolvable.

With regard to the conspiracy allegations, the record is barren of any proof.

Aside from the wholly conclusory allegations of "conspiracy", "concert" and "aiding and abetting", and the mere tracking of the statutory language of 10b–5, the complaint does not offer a clue as to how the conspiracy was formed, what steps were taken in furtherance thereof, etc. It would be wholly unjustified to allow the complex and costly machinery of a class action to clank into gear solely on the basis of a conclusory allegation of conspiracy.[7]

Analysis of the complaint without regard to the conspiracy allegations also presents obstacles at this juncture.[8]

a) Questions of Typicality—Rule 23(a)(3). Plaintiff proposes to represent all purchasers of Penn Central

---

4. *See* Korn v. Franchard, 456 F.2d 1206 (2d Cir. 1972); Green v. Wolf, 406 F.2d 291, 298 (2d Cir. 1968), cert. denied, Troster, Singer & Co. v. Green, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969).

5. *See* Eisen v. Carlisle & Jacquelin, 370 F.2d 119 at 121 (2d Cir. 1966), cert. denied, 386 U.S. 1035, 87 S.Ct. 1487, 18 L.Ed.2d 598 (1967); Korn v. Franchard, 456 F.2d at 1214. This does not appear to be a compelling factor in this case since there are two other pending proposed class actions in this district alone containing substantially similar allegations to the instant complaint. *See* Dura-Built Corporation et al. v. Chase Manhattan Bank et al., 70 Civ. 4666; Joseph Feldman v. Chase Manhattan Bank, 71 Civ. 1963; *See also* Israel Patents Corp. and Phillip Levine v. Chase Manhattan Bank, N. A. et al., 71 Civ. 2299.

6. *See* Schoenbaum v. Firstbrook, *supra.*

7. The Court of Appeals has indicated that the postponing of a decision on the propriety of a class action may sometimes be the wisest course of action. See Eisen v. Carlisle & Jacquelin, 391 F.2d 555 at 567 (2d Cir. 1968). In Feldman v. Chase Manhattan Bank, et al., *supra,* Judge Gurfein determined that class action status be held in abeyance until discovery had been completed as to the allegations of concerted action. Tr. p. 45, January 14, 1972.

8. Plaintiff has not called our attention to a case where class action status was granted in a purely nondisclosure situation [But cf. Esplin v. Hirschi, 402 F.2d 94 (10th Cir. 1968) (class action held proper where *both* misrepresentations and nondisclosure)] or in a case involving multiple defendants in which no conspiracy or concert of action was alleged. While we do not think that the motion should necessarily be denied even if plaintiffs should fail to make out a threshold demonstration of conspiracy (and, indeed, that is why we have extended the analysis here on the assumption that no conspiracy will be shown) the lack of precedent engenders, in part, at least, the wariness expressed in this opinion in allowing this case to go forward as a class action.

However, although there is no precedent for such a class action, there are several reasons (other than the ones we have enunciated) for not denying the motion outright. For example, if it should turn out that defendants did sell on the basis of inside information, but not in concert, class action treatment may provide the only practicable vehicle for a potentially large number of claimants to recover. Furthermore, surely a factor in favor of a class action here is that proof of reliance may not be necessary. See Affiliated Ute Citizens of Utah et al. v. United States et al., 406 U.S. 128, 153–154, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); Korn v. Franchard, *supra,* 456 F.2d at 1213, and cases cited thereunder.

stock during the period April 22, 1970 to June 21, 1970. The House Committee on Banking and Currency in its report entitled "The Penn Central Failure and the Role of Financial Institutions" *supra*, enumerated a number of significant public and non-public events believed to be of importance by the SEC during this period which affected trading in Penn Central common stock. (p. 4–5) We agree with defendant's contention (p. 20–21 Defendants' Consolidated Memorandum) that purchasers who bought stock at the beginning of the period would have an interest in maximizing the significance of events that preceded their purchases, while at the same time minimizing the significance of events that followed their purchases. Purchasers who bought late in the period, on the other hand, would have an interest in minimizing the significance of earlier events in order to maximize the materiality of later events. Plaintiff Newton's posture in presenting his claim (purchase on May 5, 1970), then, could be untypical and even antogonistic to those proposed class members whose transactions occurred later in the period. See Rule 23(a)(3) and (4).

There is also a danger that plaintiff may not adequately represent the class because his theory of recovery might be inimical to other members of the class. While plaintiff seeks to represent all purchasers of common stock during the relevant period, there is no indication, in the complaint or the record, whether plaintiff purchased from a named defendant. If it turns out that plaintiff did not purchase from a defendant, he might not adequately represent those who did, for the latter will want to increase the amount of their recovery (assuming a limited fund) from defendants by limiting the claimants to only those who purchased from a named defendant.[9] Assuming again that no conspiracy is shown, if discovery reveals that Newton did purchase from a named defendant, there is a question whether he would have adequate incentive to prosecute the case diligently on behalf of other members of the proposed class.[10]

b) Common Questions of Law or Fact —Rule 23(b)(3). In this state of the record the case appears to differ markedly from those cases plaintiff relies upon to support class action treatment. In the ordinary class action, the potential class contends that it has relied on a single written document or a number of interrelated documents that contained material misrepresentations or omissions.[11]

---

9. If recovery is limited to just those purchasers who bought from named defendants, it is possible the potential claimants would be so few that joinder would be practicable. See Rule 23(a)(1).

10. A substantial question is also raised as to whether, assuming Newton did *not* purchase from a defendant and no conspiracy is proven, he will have failed to state a cause of action under 10b–5 since the "in connection with" requirement may not be satisfied. One who has not stated a cause of action on his own behalf may not represent a class. Bailey v. Patterson, 369 U.S. 31, 32–33, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962); Greenstein v. Paul, 400 F.2d 580 (2d Cir. 1968).

11. Penn Central Securities Litigation, 347 F.Supp. 1327 (Eastern District of Pennsylvania, 1972) a sister case to the one we are considering, appears to be such an action and is thus distinguished from the case at hand. Judge Lord found in *Penn Central* that the 10b–5 claims related substantially to positive documentary misrepresentations rather than failures to disclose and, in addition, that the defendants in *Penn Central*, were alleged to have engaged "in a common course of fraudulent conduct which was directed against all investors and that the financial statements issued were interrelated and cumulative, thus raising substantial questions which are common to all investors." (p. 1344). *See also* Korn v. Franchard, *supra*, where the court stated 456 F.2d at 1212: "The line of prior decisions suggests, quite to the contrary, that the common questions predominate where, as here, there is a single written document charged with important omissions."

In such cases, once it is determined that the prospectus is fraudulent, questions of damages and reliance are easily resolvable. Here, however, plaintiff has not sufficiently crystallized the facts or, even more significantly, his theory of the case, so as to establish that any common predicate of liability exists.[12] Because of the numerous and diverse events that had the potential of affecting each defendant's decision to sell, the danger exists that liability will have to be separately established. In each case a preliminary determination will need to be made as to whether or not that defendant sold on the basis of inside or public information.[13] While some of the questions raised may reveal themselves to be merely problems associated with reliance and damages, we think that until the facts are clarified, the motion should be denied.

To summarize the dispositions: (1) plaintiffs' motion to amend the complaint is granted and accordingly defendants' consolidated motion to dismiss is denied as moot; (2) O'Neill's, Alleghany's and Investors' motions for summary judgment are denied as indicated; (3) plaintiff's motion for a class action determination is denied without prejudice to renewal.

It is so ordered.

12. We recognize also that as the facts are developed in the course of discovery, it may be arguable that the circumstances surrounding the distribution of many thousands of copies of the prospectus are such that as a matter of law it did not contain "inside" information. Such a determination, however, cannot be made on the present state of the record and, indeed, the issue has not been specifically presented on these motions.

13. It is significant that of the three groups of plaintiffs who sought to recover civilly in the aftermath of S. E. C. v. Texas Gulf Sulfur, *supra*, [i. e. (1) sellers who sold before April 13, when there had been no disclosure of the ore strike; (2), sellers who sold in reliance on the April 13 misleading press release; (3) sellers who sold immediate-

ly after the non-misleading April 16 press release, but before the news had been adequately disseminated to the public] only the second group was accorded class action status. In denying class action status to the first group, Judge Bonsal stated: "In an actively traded stock on a number of national stock exchanges it is extremely unlikely that many sellers could prove any causative relationship between their sales and the *failure* to disclose, and certainly this court cannot make a preliminary determination that the members of the class would not have sold in the event of disclosure. Unlike the press release actions, there is no common basis for establishing liability." CCH Sec.L.Rep. 1970–71 Transfer Binder at § 91,697. (Emphasis added)