**AMSWISS INTERNATIONAL CORP.
et al., Plaintiffs,**

v.

**HEUBLEIN, INC. et al., Defendants.**

**Civ. A. No. C 74–1608 A.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Sept. 22, 1975.

I. Stephen Rabin, Rabin & Silverman, New York City, Gambrell, Russell, Killorin, Wade & Forbes, Harold L. Russell, Sewell K. Loggins and Michael E. Ray, Atlanta, Ga., for plaintiffs.

Morrison, Paul, Stillman & Beiley, New York City, and Neely, Freeman &

Hawkins, William E. Cetti, Cartersville, Ga., for Charles W. Davis.

John T. Kubinski, pro se.

Heyman & Sizemore, William H. Major, Atlanta, Ga., Bressler, Meislin, Tauber & Lipsitz, New York City, for Craig-Hallum.

Debevoise, Plimpton, Lyons & Gates, New York City, Hansell, Post, Brandon & Dorsey, Dom H. Wyant and Gary W. Hatch, Atlanta, Ga., for A. T. Davis, Sr., A. T. Davis, Jr., John W. Fagerness, Harry O'Nan, James H. Houch, Philip Clauss, Charles Clauss and Richard B. Fisher.

White & Case, New York City, John A. Pickens, Robert W. Hurst and Kirk M. McAlpin, King & Spalding, Atlanta, Ga., for Heublein, Inc., Kentucky Fried Chicken Corp., DFS, Inc., James H. Wille, Christopher W. Carriuolo, Barry M. Rowles and Stuart D. Watson.

Willkie, Farr & Gallagher, New York City, for Lynwood J. Andrews and Richard Clauss.

Dunnington, Bartholow & Miller, New York City, Robert G. Walther, Wright, Walther & Morgan, Rome, Ga., for J. P. Martiniere.

Brown, Wood, Fuller, Caldwell & Ivey, New York City, Powell, Goldstein, Frazer & Murphy, C. B. Rogers and Paul W. Stivers, Atlanta, Ga., for Merrill Lynch, Pierce, Fenner & Smith, Inc.

H. Boyce Connell, Jr., Dodd, Driver, McClatchey & Connell, Atlanta, Ga., for Lynwood J. Andrews.

## ORDER

JAMES C. HILL, District Judge.

This is an action arising under Section 10(b) of the Securities and Exchange Act of 1934 as amended, 15 U.S.C. § 78j(b) and the rules and regulations of the Securities and Exchange Commission promulgated thereunder, specifically Rule 10b–5. 17 C.F.R. § 240.10b–5. Jurisdiction is predicated upon Section 27 of the Act, 15 U.S.C. § 78aa.

Presently before the Court is a motion by the individual plaintiff, Amswiss International Corporation (Amswiss), to certify the case for class action. Rule 23(c)(1), Fed.R.Civ.P.; Local Court Rule 221.13. This motion has been thoroughly briefed through written memoranda of law filed by counsel for Amswiss and all of the defendants. In addition, the Court held oral arguments upon the motion on September 11, 1975.[1]

The claims asserted in the complaint arise out of the alleged unlawful failure of defendants to make public disclosure of material non-public information and, the disclosure or "tipping" of material non-public information relating to the merger of DFS, Inc., Davis Food Service, Inc. (Davis), Kentucky Fried Chicken Corporation, and Heublein, Inc. (Heublein) to selected persons prior to public disclosure of said information during the period commencing April 1, 1973 and ending April 25, 1973. The complaint further alleges that said "tipped" material information was the basis for purchases of the securities of Davis by certain persons while such information had not been generally available to the public. In addition to the alleged unlawful disclosure of material non-public information, the complaint alleges that defendants engaged in a continuing course of fraudulent conduct that deceived the holders of the securities of Davis, which course of conduct commenced on or before April 1, 1973.

Amswiss is a broker-dealer of securities. The principal of Amswiss is Mr. Glenn F. Woo. Amswiss is a "market maker"; that is, it conducts its business by being prepared to buy or sell particular securities at the prices it quotes. The clients of Amswiss are other broker-dealers or institutions. Amswiss conducts its business primarily in what is called the "Third Market," a term for those dealers who trade outside of the stock exchanges and the regional markets.

Amswiss sold 2,000 shares of Davis stock on April 18, 1973, 100 shares on April 24, 1973, and 1,000 shares on April 25, 1973. All of these sales were made by Amswiss to defendant Craig-Hallum, Inc. who was acting on behalf of two of its customers. The deposition of Mr. Woo indicates that he decided that Amswiss would sell to Craig-Hallum based on oral representations made by Mr. H. E. Pickering of Davis Food Service in a telephone conversation with Mr. Woo on April 18, 1973. Mr. Woo testified that he would not have sold the shares to Craig-Hallum without the representations which he alleges were made by Mr. Pickering. It therefore appears that the complaint actually seeks to impose liability upon defendants under two distinct legal theories:

1. Fraudulent misrepresentation relating to the sale of securities;

2. Failure to disclose material information relating to the merger negotiations.[2]

■ The burden of satisfying the requirements of Rule 23 falls on those who seek to maintain a class action. *Tolbert v. Western Electric Co.*, 56 F.R.D. 108 (N.D.Ga.1972). In this action it is Amswiss' burden to make a positive showing that *all* of the requirements of Rule 23(a) are present and that the action

---

1. The thoroughness of the briefs and the high quality of the oral arguments in this case are sincerely appreciated by the Court.

2. The affidavit of Stephen Rabin, filed in support of plaintiff's motion states at page 3:

   [6] In addition to the foregoing withholding of material information from the public while actively trading in the securities of Davis, the complaint further alleges defendants made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading. Said untrue statements or omissions were made when defendants knew and/or had reason to know that said non-disclosure would result in certain selected persons trading in Davis securities while possessing material inside information thus enabling said persons to buy Davis securities at a bargain price.

falls within one of the categories of Rule 23(b).

I. Rule 23(a)(1): The proposed class must be so numerous that joinder of all members is impracticable.

▮ Plaintiff has not at this stage of the litigation ascertained the exact size of the proposed class. Instead, it has estimated that the class would contain a minimum of 100 members. While the Court finds that failure of the plaintiff to make a more definite ascertainment of the size of the class is some impairment to its position, this is not, in itself, a fatal defect in plaintiff's motion. It has been held that mere speculation is insufficient to carry plaintiff's burden on numerosity, *Cannon v. Texas Gulf Sulphur Co.,* 53 F.R.D. 216 (S.D.N.Y.1971). However, it is possible to allow a class action to proceed upon a mere estimate of the size of the proposed class. *See Hanwerger v. Ginsberg,* CCH Fed.Sec.L. Rep., ¶ 94,934 (S.D.N.Y.1975). The Court apprehends that the better procedure, when the size of the class has not been exactly determined, would be to allow plaintiff additional time in which to fulfill its burden in this regard.

II. Rule 23(a)(2): There must be questions of law or fact common to the class.

The (a)(2) question is closely related to whether or not class action is proper under Rule 23(b)(3). However, the Court feels it to be advisable to observe that there are questions of law and fact that are not common to the class.

▮ To the extent that plaintiff's class relies upon the oral misrepresentations of Mr. Pickering, it is clear that a class is not appropriate. In the first place, there is no indication in the record that any member of the proposed class, except plaintiff, relied upon or received any affirmative misrepresentations from any of the defendants. A similar situation was present in *Simon v. Merrill Lynch, Pierce, Fenner and Smith, Inc.,* 482 F.2d 880 (5th Cir. 1973), where the Fifth Circuit affirmed the denial of class action. The facts of the case showed that:

> . . . Simon had "unique" access to information regarding SCC through that company's board chairman, his personal friend, that there was no showing that the oral representations made to Simon by a Merrill Lynch salesman had been similarly made to other members of the purported class, and plaintiff could not supply the required proof for the entire class on the issues of misrepresentation and omission.

482 F.2d at 882.

Even if other members of the proposed class were the victims of affirmative oral misrepresentations, a class action is not maintainable. The *Simon* court stated at 882:

> If there is any material variation in the representations made or in the degrees of reliance thereupon, a fraud case may be unsuited for treatment as a class action. *See* Rule 23, Advisory Committee's Official Note, 39 F.R.D. 98, 107 (1966). Thus, courts usually hold that an action based substantially, as here, on oral rather than written misrepresentations cannot be maintained as a class action. *See, e. g., Morris v. Burchard,* 51 F.R.D. 530 (S.D.N.Y.1971); *Moscarelli v. Stamm,* 288 F.Supp. 453 (E.D.N.Y.1968).

Consequently, to the extent that plaintiff's claim is based upon the alleged oral misrepresentations of Mr. Pickering, it does not present questions of law and fact common to the class.[3]

---

3. At oral hearing, plaintiff's counsel advanced a somewhat novel, ingenious and "facially" persuasive argument that there was really no difference between the statements made by Mr. Pickering in the telephone conversation and the asserted failure of the defendants to make public the status of merger conversations. Woo, however, has testified that he would not have sold short based upon market knowledge. He sold because he asked Mr.

III. The claims or defenses of the representative party must be typical of the claims or defenses of the class.

■ The Court perceives that this requirement of Rule 23 would not be met if the representative plaintiff did not have the incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individual actions. *See Robinson v. Penn Central Co.,* 58 F.R.D. 436 (S.D.N.Y.1973). In other words, in the course of proving its own claim plaintiff must also prove the claims of the other members of the class. The claims and defenses of the representative would not be typical if it would require substantially more or less proof than required for the other members of the class.

In *Robinson, supra,* the district court held that a purchaser who bought stock could not represent a class of purchasers who bought before him since the late purchaser "would have an interest in minimizing the significance of earlier events in order to maximize the materiality of later events. 58 F.R.D. at 443. In this connection, the sale of stock by plaintiff occurred during the period of April 18 through April 25, while the class would include sellers from and after April 1. Defendants assert, and plaintiff has not tried to refute, that pre-trial discovery has revealed that while Heublein and Davis had contacts with each other, no merger discussions occurred until April 19. If April 19 be a significant date, the rationale of *Robinson* would apply to this action. Plaintiff's interests would be served by attempts to maximize the April 19 date while class members who sold before that date would best be served by minimizing that date. The claims would thus be untypical.

An additional requirement of (a)(3) is presented in *Koos v. First National Bank,* 496 F.2d 1162, 1164 (7th Cir. 1974), where the court held that a party may not represent a class if "a major focus of the litigation will be on an arguable defense unique to the named plaintiff . . . ." The Court reasoned that to allow such a class representative "may well have resulted in less attention to the issue which would be controlling for the rest of the class. A representative plaintiff should not be permitted to impose such a disadvantage on the class. * * * [R]epresentative plaintiffs should not be distracted by a relatively unique personal defense." 496 F.2d at 1165.

■ It must be remembered that plaintiff is working under two different legal theories. The deposition of Mr. Woo shows that plaintiff relied upon the

Pickering whether or not Pickering knew of anything that might tend to cause a rise in the price of Davis stock and asserts that Pickering stated positively that he knew of nothing. The argument advanced is that Pickering's response was nothing more than the "articulation of the company's silence." Yet, Woo, for Amswiss made a specific inquiry and received a specific reply. The suggested class members made no specific inquiry and received no specific reply. The Court cannot find those positions equal or, even, sufficiently similar for Amswiss and the class to present the same issues in this case.

To illustrate, under Rule 403 of the Federal Rules of Evidence, the Court may exclude relevant evidence if it is merely cumulative and a waste of time. Were the Court considering excluding evidence of the telephone conversation on the basis that it was merely cumulative to the evidence that the defendants had violated 10b–5 by withholding information, would not Amswiss be badly treated should its counsel acquiese in such an exclusion? To say that the positive statement by Pickering is the same as the company's silence is to deny to Amswiss an arrow in its quiver not possessed by the other class members. Were Amswiss the only plaintiff, and if, under some procedural situation, its counsel were called upon to elect to proceed either upon the Pickering conversation or the general silence of the corporation, would they not be hard put to elect to forego evidence of the asserted affirmative misrepresentation? In this general connection see: *Stevens v. Vowell,* 343 F.2d 374/379 (10th Cir. 1965) ("It is only necessary to prove one of the prohibited actions such as the material misstatement of fact or the omission to state a material fact"); 37 Am.Jur.2d, Fraud & Deceit, § 144 et seq.; § 174 et seq.

alleged oral misrepresentations of Mr. Pickering and would not have acted without it. The other members of the class would be relegated to reliance upon pure non-disclosure and not upon any affirmative misrepresentations.[4] The present state of the law in the Fifth Circuit indicates that plaintiff, being the victim of alleged affirmative misrepresentation and the members of the class, being victims of non-disclosure, would have to prove reliance to a different degree.

In *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), the Supreme Court ruled that:

> Under the circumstances of this case, involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision. . . . This obligation to disclose and this withholding of a material fact establish the requisite element of causation in facts.

The *Ute* decision, however, has not been broadly interpreted by the Fifth Circuit. In *Simon, supra,* the Court stated at 884:

> Although *Ute* does state that a plaintiff need not specifically demonstrate reliance on particular omissions, that case did not involve, as here, a general lack of reliance by the plaintiffs on the defendant's representations.

\* \* \* \* \* \*

> This reasoning is apparent in this Circuit's holdings that some element of general reliance by plaintiff, even in nondisclosure cases, is essential to a Rule 10b–5 action.

The Fifth Circuit reiterated this point in *Vohs v. Dickson,* 495 F.2d 607, 622 (5th Cir. 1974).

In [*Ute*] the Supreme Court stated that ". . . positive proof of reliance is not a prerequisite to recovery." However, as we explained in [*Simon*] this language must be confined to making proof of *specific* reliance on particular omissions unnecessary when the circumstances indicate that the plaintiff placed some *general* reliance upon the defendant's disclosing material information.

It thus appears that a party wishing to recover in a nondisclosure case in this circuit must present an argument showing either that his reliance is shown or that his reliance should be presumed. Both *Simon* and *Vohs* indicate that proof of reliance upon the facts misrepresented, or not disclosed, will be presumed in a specific transaction only when the injured party relied upon the charged party in making its investment decisions. In absence of such general reliance each of the members of the class will have to establish specific reliance on the particular omission alleged against the defendants. The proposed members of the class would stand in this position. On the other hand, Mr. Woo has stated that he relied expressly on the statements made to him by Mr. Pickering declining to rely upon market-place information. This is the situation ruled upon by the Supreme Court in *Ute* requiring no proof of reliance. Plaintiff therefore need neither distinguish *Simon* and *Vohs* nor show that the limited presumption of reliance found in those cases is appropriate here. Moreover, there appears to be a conflict between the interest of the absent class in showing reliance on the market and the position of plaintiff that it would not have sold Davis shares solely in reliance on the market.

Consequently, plaintiff's interest and claim appear not to be typical of the claims of the class. Class action would seem inappropriate where each plaintiff needs to prove his own reliance. In ad-

---

4. As previously discussed, even if other members of the proposed class were victims of affirmative oral misrepresentations, class action is still not appropriate.

dition, plaintiff may not have to prove one of the critical elements of the absent class members' case in order to recover.

IV. The representative party must fairly and adequately protect the interests of the class.

Defendants contend that plaintiff is not a proper representative to fairly and adequately represent the interests of the class. Plaintiff vigorously contends that it is a proper class representative and that it has and will adequately represent the interests of the class.

Defendants have placed into the record two recent opinions from the United States District Court for the Southern District of New York. *SEC v. D'Onofrio*, 72 Civ. 3507 (S.D.N.Y. June 2, 1975); *SEC v. Cooper*, 402 F.Supp. 516 (S.D.N.Y.1975). These were enforcement actions brought by the SEC against Amswiss, Woo and others to enjoin them from committing future violations of the registration and antifraud provisions of the securities laws.

In *D'Onofrio*, Judge Gagliardi issued a detailed finding of fact and conclusions of law and ruled:

On the basis of Woo's knowledge, Yamada's testimony and proof of the surrounding circumstances . . . the Court finds that Woo was a knowing participant in the scheme to cross the shares into D'Onofrio's account at a substantial discount.

After accomplishing the cross through Amswiss to the Bank, D'Onofrio and Woo set out to manipulate Galco's price up to the level at which they hoped to distribute the shares on the market. (Slip opinion at 9)

\* \* \* \* \* \*

In summary, beginning with the March 31 transactions—in buying and selling Galco stock for D'Onofrio's account at the Bank, and buying and selling Galco stock as a principal, often in a short position—Amswiss and Woo participated in a scheme with D'Onofrio to manipulate upward the price of

an essentially worthless security for the purposes of inducing third-party purchases and distributing their Galco shares to the public. (Slip opinion at 12)

\* \* \* \* \* \*

Accordingly, the court concludes that defendants have manipulated Galco common stock within the meaning of § 9(a)(2), and therefore, violated § 10b of the Exchange Act, Rule 10b–5 thereunder, and § 17(a) of the Securities Act. (Slip opinion at 21)

\* \* \* \* \* \*

In view of the totality of the circumstances, this court concludes that Amswiss and Woo would likely participate in future unlawful distributions and manipulations. (Slip opinion at 23)

Based upon his findings of multiple violations of the securities laws, Judge Gagliardi permanently enjoined Amswiss and Woo from future violations of the securities laws with respect to any security.

Judge Weinfield entered a similar injunction against Amswiss and Woo on *Cooper*. A portion of this opinion deals with Woo's credibility as a witness and his general character as viewed by Judge Weinfield:

The issue before this Court is whether co-defendants Amswiss and Woo knew or should have known of D'Onofrio's improper activities and whether they aided and abetted his manipulative practices and other violations of the securities laws. Based upon all the evidence, including particularly the demeanor of Woo at the trial, I find that the SEC has sustained its burden of proof. I find that Woo was, to understate it, not a credible witness. As the Court observed several times during his testimony, it was difficult to determine whether his answers were founded on imagination, assumption or conjecture. Indeed, his own attorney acknowledged that por-

tions of his testimony were so contradictory that some "clarification" was required. Woo was ready with glib but implausible explanations for questionable transactions. A careful word-by-word reading of the trial transcript not only confirms the Court's observation at the time of trial, but reveals a calculated and cunning attempt by Woo, sophisticated in the ways of the securities market, to cover up his role as an active participant and an aider and abetter of D'Onofrio's practices. His entire course of conduct reflects a conscious purpose to obscure his knowing participation in D'Onofrio's fraudulent activities. Indeed, the irreducible minimum finding must be that he deliberately closed his eyes to obvious facts readily observable with respect to the transactions which were at the core of the manipulative practices. (402 F.Supp. at 518)

Later in his opinion, Judge Weinfield held:

The evidence establishes, however, that Woo was not just negligent but that he wilfully aided and abetted the contrived stock trading. Woo did not merely overlook the unrealistic buy and sell orders and the suspicious price jumps in Meridian, he was aware of the plot to manipulate Meridian and knowingly and wilfully joined the scheme to help it succeed. (402 F.Supp. at 522)

█ Plaintiff protests that these findings are not relevant to this proceeding since they involve completely separate and distinct sets of facts. The Court, however, finds that the case of *Ash v. Brunswick*, 405 F.Supp. 234 (D.Del.1975), CCH Fed.Sec.L.Rep. ¶ 95,109, to be persuasive authority that plaintiff should not be permitted to represent the class. In *Ash*, the Court held that findings of fraudulent conduct made in a prior, unrelated case would disqualify a party from serving as class representative.

In an affidavit submitted earlier in this litigation it was asserted that Amswiss "far from being a nominal plaintiff

as in most class actions" will be an active and central participant in the case because Woo will present "testimony [which] will be indispensable in proving plaintiff's case." (Affidavit of I. Steven Rabin, dated July 10, 1974). If this be true, the Court would find it difficult to justify allowing the class to be represented, and, potentially to have its claims adjudicated, upon the testimony of Woo in light of the findings by Judge Weinfield that Woo is "not a credible witness."

### V. Conclusions.

The Court does not find it necessary to determine whether or not the requirements of Rule 23(b) have been met. Some of the observations already made by the Court are applicable to Rule 23(b) as the requirements tend to overlap. The Court feels that, looking at the totality of the circumstances surrounding the present litigation with Amswiss as the proposed class representative, this action should not proceed on a class basis. The Court holds that plaintiff has not carried its burden. *Clark v. Thompson*, 206 F.Supp. 539 (S.D.Miss.1962), aff'd, 313 F.2d 637, cert. denied, 375 U.S. 951, 84 S.Ct. 440, 11 L.Ed.2d 312.

The Court finds that the culmination of the following factors makes class action inappropriate.

1. Plaintiff has not tried to define, precisely, the extent of the class. It has merely estimated the size of the class.

2. Plaintiff has a potential interest in upgrading the importance of merger talks taking place on April 19, which would not be in the interest of those proposed class members who sold stock prior to April 19, but after April 1.

3. Plaintiff has allegedly been the victim of an oral misrepresentation not made to other members of the proposed class. Class actions are not appropriate where there has been an oral misrepresentation to various members of the class.

4. The Fifth Circuit rule seems to indicate that it is still necessary to show

some reliance in a nondisclosure case and that each member of the class would have to prove some degree of reliance.

5. Class action is not appropriate where oral misrepresentations are given to the class representative but not to the other members of the class.

6. Class action should be denied where it appears that the representative could not serve in a fiduciary capacity because of past misconduct, and where there is a strong indication that testimony by the class representative, as personified by its principal, might not be credible.

■ In addition, the Court finds that there are no strong policy reasons for granting class status to the present litigation. Class litigation may be beneficial to some members of the proposed class in that their potential claim may be too small to justify the time and expense of litigation. The Court does not view this order as foreclosing the possibility that some other member of the class might attempt to bring a class action on the facts common to them all. But under the present circumstances, with Amswiss as the proposed representative, the Court feels that because of its unique claim of oral misrepresentation, the apparent adversity of some of its claims to the rest of the class, and its principal officer's past conduct in the securities field, it has not met its burden of showing that the present action is proper for class action and that it is the proper representative of the class. It also appears that, in denying class status, the Court is not dealing a death blow to this action. While certain potential class members may have minute claims for damages, plaintiff is alleging damages of about $20,000.00. Nothing in this order touching upon past activities of Woo or Amswiss would appear pertinent to the continuation of this case, with Amswiss as the plaintiff. *Woolf v. S. D. Cohn & Co., et al.*, 515 F.2d 591 (5th Cir. 1975).

Plaintiff urges that denial of class status to this case would foreclose other potential plaintiffs from representing the class. At the oral hearing, counsel for plaintiff in effect argued that there are no other potential claimants available to "carry the flag" and represent the class. The Court cannot agree with counsel that there are no other representatives available. The people who were allegedly aggrieved by defendants' actions were all trading in a sophisticated market. They were not operating in a vacuum, and there are certainly persons in the class who are knowledgeable of the history of the stock and its price. The SEC investigation into the merger of the companies is underway. It is inconceivable, as plaintiff's counsel argues, that, if class action is here denied, no one else is available to represent the class, and they are helpless to bring their own individual actions.

The Court also rejects plaintiff's argument that class action is needed in this case so as to effectuate the policies behind the Securities Act. In spite of any "private attorney-general" theory that might be argued, the Court does not view the present civil action as a primary vehicle for chastising defendants for any violations of the securities laws. This action is designed to reimburse plaintiff for economic damage. The Securities and Exchange Commission has been designated by Congress as the agency to ensure that defendants comply with the law. Discovery motions argued before this Court call attention to the fact that the SEC is investigating the facts surrounding this particular merger to ascertain whether or not action should be commenced against defendants. The Court views this SEC action, and not the instant case, as the primary means of disciplining defendants for any wrongs they may have committed.

Finally, the Court agrees with Judge Edenfield's statement in *Buford*, that "[u]ntil otherwise directed, this Court, for one, intends to carefully scrutinize every action in which plaintiffs seek monetary relief and wish to represent a class of similarly situated persons to determine if all the requirements of Rule

23 are fully satisfied . . . ." 333 F.Supp. at 1251. The Court feels that any one of the reasons set out above could justify the denial of class status to this action, however, the Court does not have to so rule. The sum total of all of the circumstances clearly requires a ruling denying class status to this action. Justice would not be served by allowing plaintiff to represent the proffered class. Plaintiff's motion must be, and is, DENIED. *See A. L. Barnett & Son, Inc. v. Outboard Marine Corp.*, 64 F.R.D. 43 (D.Del.1974).